UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA O'GRADY, individually and as Executrix of the Estate of JOHN W. PARSELS,<br><br>  Plaintiff,<br><br>v.<br><br>SAFETY-KLEEN SYSTEMS, INC.,<br><br>  Defendant. | Civil Action No. 19-cv-11814-ADB |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO COMPEL**

BURROUGHS, D.J.

Plaintiff Patricia O'Grady, the widow of John W. Parsels and the executrix of his estate, brought this wrongful death action, which was originally filed in state court, against Defendant Safety-Kleen Systems, Inc. ("Safety-Kleen"), alleging that Safety-Kleen knowingly included carcinogens in certain of its products and that Parsel's exposure to those products killed him. [ECF No. 1-2 ("Am. Compl.") ¶¶ 5, 19–20]. On March 30, 2020, the Court denied Safety-Kleen's motion to dismiss and granted O'Grady's motion for remand to state court to the extent that she sought jurisdictional discovery. [ECF No. 32]. Currently before the Court is O'Grady's motion to compel Safety-Kleen to provide responses to certain discovery requests. [ECF No. 41]. For the reasons set forth below, O'Grady's motion, [id.], is **DENIED**, but the Court will permit her to serve additional discovery requests if she wishes to do so.

**I.      BACKGROUND**

O'Grady filed her original complaint in Plymouth County Superior Court on May 10, 2019. [ECF No. 1-1]. Safety-Kleen removed the case to this Court on August 23, 2019,

asserting diversity jurisdiction. [ECF No. 1 at 1, 3]. Safety-Kleen then moved to dismiss the complaint for lack of personal jurisdiction, arguing that the Court (1) cannot exercise general personal jurisdiction over it because it is a Wisconsin corporation with its principal place of business in Texas, and (2) cannot exercise specific personal jurisdiction over it because there is no nexus between O'Grady's suit and Massachusetts.[1] [ECF No. 8 (motion); ECF No. 9 at 5–16 (brief)]. O'Grady filed a dueling motion for remand, arguing that 28 U.S.C. § 1441(b)(2) precludes Safety-Kleen—which she asserts is a citizen of Massachusetts, in part because its ultimate parent corporation, Clean Harbors, Inc. ("Clean Harbors"), has its principal place of business in Massachusetts—from removing the case to federal court. [ECF No. 17 (motion); ECF No. 18 (brief)]. At bottom, the parties dispute whether Safety-Kleen's principal place of business is in Massachusetts. Accordingly, in its March 30, 2020 Order, the Court permitted limited discovery to develop a factual record on that issue. [ECF No. 32 at 28]. In so doing, the Court identified the following considerations relevant to that determination:

- The place where Safety-Kleen's officers direct, control, and coordinate the corporation's activities;
- The place where Safety-Kleen's owners, though perhaps hands off in day-to-day decisions, exercise ultimate control over the corporation by setting policies and goals;
- The place where Safety-Kleen's legal, and accounting functions occur and where its chief executive maintains an office;
- The place where Safety-Kleen's president and corporate officers perform duties and where it maintains business records and processes financial transactions;
- Whether Safety-Kleen and Clean Harbors are separately incorporated;
- Whether Safety-Kleen and Clean Harbors have separate boards of directors;
- Whether Safety-Kleen and Clean Harbors keep separate accounting and tax records;
- Whether Safety-Kleen and Clean Harbors have separate facilities and personnel; and

---

[1] Parsels was a Florida resident and exposed to Safety-Kleen's products only in Florida. See [Am. Compl. ¶¶ 3, 14–20].

2

- Whether Safety-Kleen and Clean Harbors have separate bank accounts.

[Id. at 21–27].  The Court also made clear that regardless of which party's position is borne out by jurisdictional discovery, "the case will not remain before this Court" because "if Safety-Kleen has its principal place of business in Massachusetts, then removal was improper and the case will be remanded" and "[i]f Safety-Kleen's principal place of business is not in Massachusetts, then the Court lacks personal jurisdiction over it."  [Id. at 28].

The parties have engaged in significant written discovery.  On September 23, 2019, O'Grady served interrogatories, requests for production, and requests for admission.  [ECF No. 43-1].  Safety-Kleen responded approximately a month later.  [ECF No. 43-2 (Resps. to Interrogs.); ECF No. 43-3 (Resps. to Reqs. for Produc.); ECF No. 43-4 (Resps. to Reqs. for Admis.)].  Following the Court's March 30, 2020 Order, on August 7, 2020, Safety-Kleen supplemented its discovery responses.  [ECF No. 43-5 (Supp. Resps. to Initial Interrogs.); ECF No. 43-6 (Supp. Resps. to Initial Reqs. for Produc.)].  O'Grady served additional interrogatories and requests for production on September 25, 2020.  [ECF No. 43-7].  On November 23, 2020, Safety-Kleen responded, [ECF No. 43-8], and provided a redaction log, [ECF No. 43-9].  The parties met and conferred on November 30, 2020.  [ECF No. 43 ¶ 3].  That same day, after the parties were unable to resolve their disagreements regarding the adequacy of Safety-Kleen's discovery responses, O'Grady filed the instant motion to compel.  [ECF No. 41].  On December 8, 2020, the parties again met and conferred but remained at an impasse.  [ECF No. 43 ¶ 4].  On December 14, 2020, Safety-Kleen opposed O'Grady's motion to compel.  [ECF No. 42].

## II.      DISCUSSION

In her motion to compel, O'Grady makes three arguments.  See generally [ECF No. 41].  First, that Safety-Kleen has lodged multiple "blanket" objections, which obscure its responses, and are "inconsistent with the principles of the Federal Rules of Civil Procedure and make it

3

impossible for [O'Grady] to determine if Safety-Kleen is withholding information or simply does not have any." [Id. at 3–4]. Second, that Safety-Kleen has "taken an obstructive posture in responding to [O'Grady]'s interrogatories regarding its relationship, or lack thereof, with Clear Harbor [sic]." [Id. at 4–5]. Third, that Safety-Kleen has "arbitrarily restricted the time frame at issue" by refusing to provide information pre-dating the May 2019 filing of her complaint. [Id. at 6].

### A. Relevant Time Frame

O'Grady maintains that Safety-Kleen has impermissibly objected to her discovery requests to the extent that they seek information pre-dating the filing of her complaint in May 2019 and that Safety-Kleen should provide information from 2015 through the present. [ECF No. 41 at 6]. First, O'Grady does not provide any examples of Safety-Kleen's allegedly impermissible objections[2] or identify any specific information that she believes Safety-Kleen has impermissibly withheld on this basis.[3] See [id.]. Rather, she asks the Court to "order [Safety-Kleen] to provide all information from 2015 forward as requested by Plaintiff." [Id.]. Second, as Safety-Kleen notes, [ECF No. 42 at 7], jurisdiction is evaluated as of the time an action is initiated. Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 570 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" (quoting Mollan v. Torrance, 22 U.S. (9 Wheat.) 537, 539 (1824))); In re

---

[2] In many of its discovery responses, Safety-Kleen objected insofar as O'Grady sought information *post*-dating the filing of her complaint. See, e.g., [ECF No. 43-5 at 2 (Resp. to Interrog. No. 1) ("Safety-Kleen further objects to Interrogatory No. 1 and will not respond to the extent this Interrogatory purports to require Safety-Kleen to provide information that post-dates the May 2019 filing of [the complaint].").

[3] Safety-Kleen represents that it did, in fact, provide certain information pre-dating the May 2019 filing, including bank and tax statements from 2018 and board materials from 2017. [ECF No. 42 at 7–8].

4

Olympic Mills Corp., 477 F.3d 1, 7 (1st Cir. 2007) ("The rule is most inflexibly applied at the time of filing, for it has long been settled that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" (quoting Grupo, 541 U.S. at 570)).  Accordingly, O'Grady is not entitled to discovery unless it is relevant to whether Safety-Kleen's principal place of business was Massachusetts as of May 2019, when she filed her complaint.

Based on the Court's independent review of Safety-Kleen's discovery responses—which is necessitated by the fact that O'Grady does not point the Court to any specific deficiencies— Safety-Kleen has appropriately limited its responses temporally given that discovery is proceeding only on this limited basis.  For instance, in responding to Interrogatory No. 16, which sought information regarding Safety-Kleen's legal department "from 2015 through the present," Safety-Kleen stated that, on or about May 10, 2019, "Safety-Kleen did not directly employ in-house attorneys."  [ECF No. 43-8 at 2 (Resp. to Interrog. No. 16)].  For purposes of determining Safety-Kleen's principal place of business, the only relevant point in time is the date that O'Grady filed her complaint, and Safety-Kleen's interrogatory response provides the information regarding that date.  Safety-Kleen's responses to other interrogatories are also appropriately limited as to time.  See, e.g., [id. at 6–7 (Resp. to Interrog. No. 27) (noting that Safety-Kleen's corporate officers resided in Texas as of May 2019)].

In sum, O'Grady is entitled to discovery only insofar as it aids the Court in its determination of Safety-Kleen's principal place of business as of May 2019, and, as far as the Court can tell, Safety-Kleen's only timing-based objections relate to requests for information from before or after that date.

B.     **"Blanket" Objections**

O'Grady next asserts that Safety-Kleen impermissibly objects to terms within her discovery requests and makes objections that render it impossible for her to determine whether Safety-Kleen is withholding information or does not have it, and asks the Court to order Safety-Kleen "to remove all blanket objections and produce all non-privileged responsive information and documents." [ECF No. 41 at 3–4]. By way of example, she highlights Safety-Kleen's responses to Interrogatory Nos. 2 and 28:

> Interrogatory No. 2:
> Please state what corporate services (i.e. accounting; payroll; computer data management; employment application processes; etc.) for Safety-Kleen are handled out of its offices at 42 Longwater Drive, Norwell, Massachusetts.
>
> Response:
> Safety-Kleen objects to Interrogatory No. 2 on the grounds that it is irrelevant, immaterial, and not proportional to the needs of the case. Safety-Kleen objects to Interrogatory No. 2 on the grounds that it is overly broad, unduly burdensome, unlimited in time and scope, and lacking in sufficient specificity. Safety-Kleen objects to Interrogatory No. 2 on the grounds that the terms "accounting", "payroll", "computer data management", and "employment application processes" are vague, ambiguous, and requires Safety-Kleen to speculate as to the definitions of these terms to respond. Safety-Kleen further objects to Interrogatory No. 2 and will not respond to the extent this Interrogatory purports to require Safety-Kleen to provide information that post-dates the May 2019 filing of PLAINTIFFS' COMPLAINT.[4] Without waiving its objections, Safety-Kleen states that it had no OPERATIONAL FACILITIES[5] or offices at 42 Longwater Drive in Norwell, Massachusetts during the RELEVANT TIME PERIOD.[6]

---

[4] "PLAINTIFFS' COMPLAINT" is defined as "the Complaint filed at Plymouth County Superior Court entitled 'Patricia O'Grady, Individually and as Executrix of the Estate of John W. Parsels vs. Safety-Kleen Systems, Inc., f/k/a Safety Kleen Corp., Civil Action No.: 1983CV00517.'" [ECF No. 43-5 at 1].

[5] "OPERATIONAL FACILITIES" is defined as "those locations utilized by Safety-Kleen that serve as the place where tasks necessary to manage and produce [the] services that Safety-Kleen provides are carried out." [ECF No. 43-5 at 1].

[6] "RELEVANT TIME PERIOD" is defined as "on or about May 10, 2019, the date Plaintiffs commenced this action at Plymouth County Superior Court entitled 'Patricia O'Grady,

> Interrogatory No. 28:
> What companies are Safety-Kleen's "corporate siblings" within Clear Harbor [sic] with which they share "corporate executive components?"
>
> Response:
> Safety-Kleen objects to this Interrogatory to the extent it is unfamiliar with any entity known as or referred to as Clear Harbor. To the extent Plaintiffs intended to refer to Safety-Kleen's ultimate corporate parent, Clean Harbors, Inc., Safety-Kleen objects and will not respond to Interrogatory No. 28 on the grounds that it is irrelevant, immaterial, and not proportional to the needs of the case. Safety-Kleen objects and will not respond to Interrogatory No. 28 on the grounds that it is overly broad, unduly burdensome, unlimited in time and scope, and lacking in sufficient specificity. Safety-Kleen objects to Interrogatory No. 28 on the grounds that the terms "Clear Harbors" and "corporate siblings" are vague, ambiguous, and require Safety-Kleen to speculate as to their meaning in order to answer. Safety-Kleen further objects to Interrogatory No. 28 and will not respond to the extent this Interrogatory purports to require Safety-Kleen to provide information that post-dates the May 2019 filing of PLAINTIFFS' COMPLAINT. Subject to and without waiving its objections, Safety-Kleen refers Plaintiffs to and incorporates by reference as if fully set forth herein Safety-Kleen's Objections and Response to Interrogatory 21.

[ECF No. 43-5 at 2–3 (Supp. Resp. to Interrog. No. 2); ECF No. 43-8 at 7 (Resp. to Interrog. No. 28)].

First, Safety-Kleen cannot be criticized for objecting to objectionable discovery requests, and many of O'Grady's discovery requests are objectionable. Taking the two examples that O'Grady herself has highlighted, Interrogatory No. 2 assumes that Safety-Kleen has an office at 42 Longwater Drive in Norwell, Massachusetts, which Safety-Kleen disputes, and Interrogatory No. 28 seeks information—the names of other companies owned by Clean Harbors—that is irrelevant to the limited jurisdictional inquiry at issue here. Other discovery requests are similarly problematic. See, e.g., [ECF No. 43-1 at 2 (Interrog. No. 3) (seeking information regarding "Safety-Kleen's complete corporate history," without any temporal limitation)].

---

Individually and as Executrix of the Estate of John W. Parse ls vs. Safety-Kleen Systems, Inc., f/k/a Safety Kleen Corp., Civil Action No.: 1983CV00517.'"  [ECF No. 43-5 at 1].

Second, with respect to O'Grady's assertion that Safety-Kleen has impermissibly objected to "basic terminology from the English language and/or terminology utilized by Defendant itself in this case," O'Grady did not include definitions or instructions in either of her two sets of interrogatories. See [ECF No. 43-1 (Initial Interrogs.); ECF No. 43-7 (Supp. Interrogs.)]. Litigants routinely include definitions and instructions in their discovery requests precisely because it can obviate the need for objections based on vagueness and ambiguity and facilitate a meeting of the minds as to the meaning of the terms included in those requests. The fact that Safety-Kleen has objected to some terms that it used in its previously-filed briefs is of no consequence, as those briefs contain no definitions and O'Grady did not instruct Safety-Kleen to construe her interrogatories with reference to those briefs.

Third, had Safety-Kleen failed to object, it would have waived its objections. See Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").

In sum, Safety-Kleen was well within its rights to make the objections it did, and the Court will not "remove" them.

O'Grady's assertion that Safety-Kleen's responses "make it impossible for [her] to determine if Safety-Kleen is withholding information or simply does not have any," [ECF No. 41 at 3], is unavailing. Safety-Kleen's discovery responses made clear when it would provide information subject to an objection and when it would withhold information. For instance, in response to Interrogatory No. 2, which asked Safety-Kleen to identify what "corporate services . . . for Safety-Kleen are handled out of its offices at 42 Longwater Drive, Norwell, Massachusetts," Safety-Kleen stated, without waiving its objections, that it had no offices at 42

Longwater Drive in May 2019.  [ECF No. 43-5 at 2–3 (Supp. Resp. to Interrog. No. 2)].  Safety-Kleen's statement could not be clearer.  Similarly, as to Interrogatory No. 28, which asked Safety-Kleen to identify its "'corporate siblings' within Clear Harbor [sic]," Safety-Kleen refused to respond on multiple grounds, including that the names of other companies owned by Clean Harbors are "irrelevant, immaterial, and not proportional to the needs of the case."  [ECF No. 43-8 at 7 (Resp. to Interrog. No. 28)].  Again, Safety-Kleen's statement that it would not be responding to Interrogatory No. 28 is clear.  Safety-Kleen's other responses are equally direct in this regard.  Compare [ECF No. 43-8 at 3 (Resp. to Interrog. No. 18 (providing information subject to objections)], with [id. (Resp. to Interrog. No. 19 (declining to respond on relevance grounds)].

In sum, Safety-Kleen's objections are justified and its responses made clear to O'Grady when Safety-Kleen refused to respond and when it responded subject to objections.

### C.   Safety-Kleen's Relationship with Clean Harbors

Finally, O'Grady argues that Safety-Kleen has taken an obstructive posture in responding to her interrogatories regarding Safety-Kleen's relationship with Clean Harbors and asks the Court to order Safety-Kleen to "fully respond to all of Plaintiff's interrogatories and requests for production without limitation or evasion and removing all of Safety-Kleen's self-serving definitional limitations."  [ECF No. 41 at 4–5].[7]

---

[7] In both her interrogatories and her brief, O'Grady mistakenly refers to "Clea**r** Harbor," as opposed to "Clea**n** Harbor**s**."  See, e.g., [ECF No. 43-7 at 1–3 (Interrog. Nos. 17, 19–21, 24, 28–30); ECF No. 41 at 4–5].  In its interrogatory responses, Safety-Kleen, quite reasonably, objected to the term "Clear Harbor."  [ECF No. 43-8 at 2–8 (Resps. to Interrog. Nos. 17, 19–21, 24, 28–30)].  It then acknowledged what it viewed to be a typographical error and objected and/or responded as if O'Grady had named the correct entity.  See, e.g., [id. at 2 (Resp. to Interrog. No. 17) ("To the extent Plaintiffs intended to refer to Safety-Kleen's ultimate corporate parent, Clean Harbors, Inc. . . .")].

As discussed above, the sole purpose of the discovery at issue is to ascertain whether Safety-Kleen's principal place of business was Massachusetts as of May 2019. With respect to the relationship between Safety-Kleen and Clean Harbors, the Court identified the following five considerations as relevant to the analysis:

- Whether Safety-Kleen and Clean Harbors are separately incorporated;
- Whether Safety-Kleen and Clean Harbors have separate boards of directors;
- Whether Safety-Kleen and Clean Harbors keep separate accounting and tax records;
- Whether Safety-Kleen and Clean Harbors have separate facilities and personnel; and
- Whether Safety-Kleen and Clean Harbors have separate bank accounts.

[ECF No. 32 at 21–27]. The parties agree that these are the relevant considerations. See [ECF No. 41 at 3; ECF No. 42 at 10–11]. Instead of simply converting the above into straightforward interrogatories,[8] O'Grady sought more detailed information regarding Clean Harbors' structure and operations.[9] Given the limited scope of discovery, O'Grady is not entitled to any of this information. For instance, where and how frequently Clean Harbors' board met and how Clean Harbors maintains its accounting records (as opposed to the limited question of whether those

---

[8] For instance, "Were Safety-Kleen and Clean Harbors separately incorporated as of May 2019?," "Identify each individual who was a member of both Safety-Kleen's and Clean Harbor's board as of May 2019," "As of May 2019, did Safety-Kleen and Clean Harbors keep separate accounting records?," "As of May 2019, did Safety-Kleen and Clean Harbors keep separate tax records?," "Identify each individual employed by both Safety-Kleen and Clean Harbors in May 2019," "As of May 2019, did Safety-Kleen and Clean Harbors share any facilities?," etc.

[9] Specifically, O'Grady asked Safety-Kleen to "identify the location of Clear Harbor's [sic] corporate legal department," [ECF No. 43-7 at 1 (Interrog. No. 17)], to "identify the location of Clear Harbor's [sic] corporate accounting department," [id. at 2 (Interrog. No. 19)], to "describe the operation of Clear Harbor's [sic] Board of Directors, specifically identifying all members of Clear Harbor's [sic] Board of Directors from 2015 through the present and stating where they meet and with what frequency they meet," [id. (Interrog. No. 20)], to identify "Safety-Kleen's 'corporate siblings' within Clear Harbor [sic] with which they share 'corporate executive components,'" [id. (Interrog. No. 28)], and to "describe how Clear Harbor's [sic] accounting and tax records are maintained," [id. at 3 (Interrog. No. 30)].

records are maintained separately from Safety-Kleen's) do not bear on whether Safety-Kleen's principal place of business was in Massachusetts as of May 2019. Accordingly, Safety-Kleen justifiably refused to respond to O'Grady's interrogatories seeking this information. See [ECF No. 43-8 at 2–3, 7–8 (Resps. to Interrog. Nos. 17, 19, 20, 28, and 30)]. Safety-Kleen did, however, provide information relevant to the jurisdictional inquiry, even when it was not specifically requested by O'Grady. See [ECF No. 42 at 11–12 (listing discovery responses)].

In sum, based on the record before the Court, it appears as though O'Grady served a number of discovery requests related to Clean Harbors, and Safety-Kleen responded to those that called for relevant information and reasonably declined to respond to those that did not.

### D. Additional Discovery

Although O'Grady's specific arguments in support of the instant motion are unpersuasive, the Court does note that some of Safety-Kleen's interrogatory responses include significant qualifications.[10] Accordingly, to the extent O'Grady wants to serve additional interrogatories, the Court will permit her to do so even though fact discovery ended on January 11, 2021. See [ECF No. 38 ¶ 3]. Should she wish to do so, the Court encourages O'Grady to read this Order carefully, craft interrogatories that are succinct, simple, clear, and seek only relevant information, and consider including definitions and/or instructions to avoid unnecessary

---

[10] See, e.g., [ECF No. 43-8 at 2 (Resp. to Interrog. No. 16) ("Safety-Kleen did not *directly* employ in-house attorneys" (emphasis added)); id. at 3 (Resp. to Interrog. No. 18) ("the executive *ultimately* responsible for Safety-Kleen's finances and corporate accounting department *as part of its DAY-TO-DAY OPERATIONS* was . . ." (emphasis added)); id. at 6 (Resp. to Interrog. No. 25) ("Safety-Kleen's records *related to its DAY-TO-DAY OPERATIONS* were stored *principally* at its headquarters in Richardson, Texas or electronically" (emphasis added)); id. at 6–7 (Resp. to Interrog. No. 27) (in response to interrogatory asking where Safety-Kleen's officers reside, noting that certain listed officers resided in Texas as of May 2019 but not stating whether those were Safety-Kleen's only officers at the time and, if not, where other officers resided)].

quibbling regarding terminology.  If O'Grady serves additional interrogatories, the Court expects Safety-Kleen to respond candidly and directly, without undue qualification.  To the extent Safety-Kleen worries that unqualified answers to interrogatories will be misconstrued by the Court in evaluating whether Safety-Kleen's principal place of business was Massachusetts as of May 2019, it may, of course, present any additional evidence that it believes will clarify the record on that topic when the issue is before the Court.  All of that being said, it remains the Court's hope that jurisdictional discovery will make Safety-Kleen's principal place of business clear and that the parties can then inform the Court whether to dismiss, transfer, or remand the case.

### III.     CONCLUSION

Accordingly, for the reasons stated above, O'Grady's motion, [ECF No. 41], is <u>DENIED</u>. If O'Grady intends to serve additional interrogatories, she should notify the Court within five days of this Order so that the Court can modify the operative Scheduling Order, [ECF No. 38], appropriately.

**SO ORDERED.**

January 13, 2021                                                                      /s/ Allison D. Burroughs
                                                                                                  ALLISON D. BURROUGHS
                                                                                                  U.S. DISTRICT JUDGE